NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
MACK E. JENKINS (Cal. Bar No. 242101)
Assistant United States Attorney
Chief, Public Corruption & Civil Rights Section
JULIA GEGENHEIMER
Department of Justice Trial Attorney
Criminal Section, Civil Rights Division
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2091
     Facsimile: (213) 894-6436
     E-mail:    mack.jenkins@usdoj.gov
                julia.gegenheimer@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 116-442-CAS |
| Plaintiff, | GOVERNMENT'S SUPPLEMENTAL BRIEFING REGARDING VULNERABLE VICTIM SENTENCING ENHANCEMENT FOR DEFENDANT EDWIN FELIX AND ALL CO-DEFENDANTS |
| v. | |
| CARLOS HERNANDEZ, et al., [ALL DEFENDANTS] | |
| Defendants. | FELIX Sentencing Date:  06/24/2019<br>FELIX Sentencing Time:  1:30 p.m. |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney's Office for the Central District of California and the Department of Justice Civil Rights Division (collectively, "the government" or "the United States"), hereby files its Supplemental Briefing Regarding the Vulnerable Victim Sentencing Enhancement for Defendant EDWIN FELIX and All Co-Defendants.

The Government's position is based on the records in this case, the attached Memorandum of Points and Authorities, the Presentence Investigation Report, and any other further information that may be requested by the Court.

Dated: June 19, 2019          Respectfully submitted,

NICOLA T. HANNA
United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division


        /S/
MACK E. JENKINS
Assistant United States Attorney

JULIA GEGENHEIMER
Civil Rights Division Trial Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES..................................1

I. INTRODUCTION......................................................1

II. ARGUMENT.........................................................3

    A. The victims in this case were vulnerable due to their characteristics and circumstances.........................5

        1. Defendant's Reliance on *Rising Sun* Misses the Mark..................................................7

    B. Defendant knew that the victims were unusually vulnerable to his crimes.................................9

    C. Defendant FELIX and his co-defendants chose an especially depraved manner to execute their crime........11

III. CONCLUSION.....................................................11

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

This filing is in response to the Court's directive for additional briefing related to the applicability of the two-level vulnerable-victim enhancement under the United States Sentencing Guidelines ("USSG") § 3A1.1(b) in this case.[1]  This direction came at the initial sentencing hearing for defendant EDWIN FELIX, aka "Boogie," ("defendant") on May 20, 2019.  Importantly, at the subsequent sentencing hearing of co-defendant Jose Saucedo (#2) on June 3, 2019, the Court sustained the government's objection to the United States Probation Office's ("USPO") failure to apply this enhancement and made specific findings supporting applying the vulnerable victim enhancement in co-defendant Saucedo's case.  The government avers that all of the same factors support the same conclusion here.  Such a conclusion is also supported by the statutory (18 U.S.C. § 3553(a)) need to avoid unwarranted sentencing disparity and the law of the case doctrine. United States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997) ("Under the 'law of the case doctrine,' a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.") (cleaned up).

Because the victims' ages (both young and elderly), the timing (both late night and on a holiday) of the firebombing, and the dense nature of the public housing in which the victims lived rendered them

---

[1] The Court directed this brief be filed in relation to defendant FELIX's sentencing; however, as discussed below, the legal and factual analysis applies equally to all other co-defendants convicted in this matter, thus the government files this supplemental brief as to all defendants.

1

particularly vulnerable to defendant's crimes, and because defendant knew of each of those characteristics and circumstances, the enhancement firmly applies to each of defendants in this matter who, like defendant FELIX, actively participated in the planning, preparation, and execution of this heinous attack.

On June 22, 2016, a federal grand jury returned an indictment charging FELIX and six co-defendants for conspiring to and carrying out the May 12, 2014, bias-motivated firebombing of African-American residents in the Ramona Gardens Housing Development (RGHD). On May 7, 2018, FELIX pled guilty to four of the eight charges against him in the indictment: conspiring to violate civil rights, violent crime in aid of racketeering, criminal interference with fair housing rights, and malicious damage of federal property.

Prior to defendant FELIX's initial sentencing hearing, the government filed its sentencing position, in which it recommended that the Court impose a sentencing adjustment under USSG § 3A1.1(b) for vulnerable victims, which would result in a two-level increase to defendant's offense level. Dkt. No. 277 at 5-7. At defendant FELIX's sentencing hearing, the government reiterated its recommendation for the two-level enhancement. Defendant's counsel opposed, arguing that the victims' youthful age was insufficient to establish the enhancement and that applying the enhancement here would necessarily mean the enhancement would apply in every hate crime; thus, he argued, this would render the enhancement indistinguishable from the underlying offense for which there already was an associated offense level. Defendant's arguments misapply the law, ignore plainly determinative and unique facts supporting the enhancement, and otherwise belie common sense.

As discussed below, the plain language of § 3A1.1(b), as well as Ninth Circuit case law interpreting that language, establish that the adjustment squarely applies to the case of defendant FELIX as well as each of his co-defendants.

**II. ARGUMENT**

Section 3A1.1 of the U.S. Sentencing Guidelines provides for a two-level enhancement to a defendant's base offense level at sentencing "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim . . . ." USSG § 3A1.1(b)(1). The Guidelines further define "vulnerable victim" as "a person . . . who is unusually vulnerable <u>due to age</u>, physical or mental condition, <u>or who is otherwise particularly susceptible to the criminal conduct</u>. <u>Id.</u> at cmnt. n. 2 (emphasis added). As the Ninth Circuit has explained, "[t]he theory behind the vulnerable victim enhancement is that conduct against the particular victim or group of victims is more blameworthy than the conduct of other offenders and thus deserves greater punishment." <u>United States v. Castaneda</u>, 239 F.3d 978, 980 (9th Cir. 2001); <u>see also</u> <u>United States v. Castellanos</u>, 81 F.3d 108, 111 (9th Cir. 1996) (enhancement applies to victims "in need of greater societal protection" and "when targeted . . . render the defendant's conduct more criminally depraved.").

The Guidelines thus require a sentencing court to make two determinations in applying a vulnerable-victim enhancement. The court must first find that one or more of the victims "belong to a class that is particularly vulnerable to the criminal activity in question[.]" <u>United States v. Veerapol</u>, 312 F.3d 1128, 1133 (9th Cir. 2002) (quoting <u>United States v. Luca</u>, 183 F.3d 1018, 1025 (9th Cir. 1999)). It must then determine if the defendant knew, or should

3

have known, that one or more individual victims "were unusually vulnerable by virtue of membership in the class identified." Id.

First, in determining a victim's vulnerability, and lost in defendant's initial analysis is that the court must consider not only a victim's age and physical or mental condition.  It must also "consider the characteristics of the defendant's chosen victim, the victim's reaction to the criminal conduct, and the circumstances surrounding the criminal act." United States v. Johnson, 132 F.3d 1279, 1285 (9th Cir. 1997) (emphasis added) (quoting United States v. Peters, 962 F.2d 1410, 1417 (9th Cir. 1992)).  Accounting for these factors, the Ninth Circuit has defined an "unusually vulnerable victim" as one who is "less able to resist than the typical victim of the offense of conviction." United States v. Nielsen, 694 F.3d 1032, 1034 (9th Cir. 2012) (quoting United States v. Wetchie, 207 F.3d 632, 634 (9th Cir. 2000), and citing Luca, 183 F.3d at 1027).

Second, to find that a defendant knew or should have known of the victim's vulnerability, "[i]t is not necessary that the defendant target the victim *because of* his vulnerability[.]" Johnson, 132 F.3d at 1285.  It is enough to find either that the defendant had actual knowledge that the victim was vulnerable, or could have reasonably anticipated that fact. Id.; Peters, 962 F.2d at 1417.

An appellate court reviews a sentencing court's factual findings regarding victim vulnerability for clear error, while the court's application of the Guidelines to those facts is reviewed for abuse of discretion. United States v. Lynn, 636 F.3d 1127, 1138 (9th Cir. 2011).

### A. The victims in this case were vulnerable due to their characteristics and circumstances.

Several characteristics of the victims targeted and circumstances of the crimes committed, taken independently and even more when taken together, rendered the victims in this case particularly vulnerable: the young age of many victims; the elderly age of others; the defendants' execution of their attack in the middle of the night; the defendants' execution of their attack on the night of a family holiday; the location they deliberately threw their firebombs; and the aspects of public housing that left the victims with little choice but to live at RGHD in confined, multi-level, tightly filled spaces.

For the Court to find that these factors establish vulnerability, it must examine "the personal traits of the victims and the specific circumstances in which the victims found themselves when the crimes were committed[.]" Wetchie, 207 F.3d at 635. Importantly, the catch-all "otherwise particularly susceptible" provision of § 3A1.1(b) explicitly contemplates that a court can and should consider circumstances other than a victim's personal traits such as age or physical condition. United States v. Weischedel, 201 F.3d 1250, 1254 (9th Cir. 2000).

The ages of multiple targeted victims – at least ten victims between the ages of five months to twelve years old (PSR ¶ 47) – certainly left them less able, if not completely unable, to defend against or respond to the midnight firebombing attack. See Luca, 183 F.3d at 1025 (to impose age-related vulnerable victim enhancement, court "need only identify the victim and, based upon evidence in the record, find the individual was in fact unusually vulnerable because

5

of youth or advanced age."). Children of such young ages are either incapable (in the case of the five-month-old infant) or less capable of recognizing the nature of such an attack and responding appropriately. They are less educated in fire safety, and less knowledgeable about how to protect themselves against fire-related injuries such as burns or smoke inhalation. They are more likely to panic, likely slower to flee such an attack, and would have been vastly physically outmatched had they encountered any of their attackers. Children are also dependent upon older caregivers in such dangerous situations. In turn, by virtue of needing to ensure the children's safety, those caregivers are less able to act quickly to defend or protect themselves and the children thus further aggravating the overall risk of harm.

In addition, by intentionally carrying out the planned firebombing at around midnight on a Sunday, when most of the residents would be sleeping, defendant ensured that the victims were especially vulnerable. In United States v. Wetchie, the Ninth Circuit found the vulnerable-victim enhancement proper in a sexual assault case involving a sleeping victim. 207 F.3d 632 (2000). There, the sentencing court found that the victim's asleep status reduced her ability to cry out or resist the defendant. The Ninth Circuit affirmed that being asleep left the victim "less able to resist criminal conduct than a typical victim" and upheld application of the enhancement. Id. at 634.

Although defendant FELIX's crimes differ from Wetchie, the Ninth Circuit's analysis applies with equal, if not more, force to this case when the victims' asleep status is combined with the other relevant factors, including youth of ten of the victims. Here, the

6

sleeping victims were less able to quickly identify that they were being attacked, to prevent or stop the attack, and to defend themselves.  By attacking sleeping victims, the defendant and his co-conspirators maximized their chances of approaching the residences, breaking through the glass windows, and throwing the firebombs through those windows, all undetected and thus undeterred.  Because the sleeping victims' response times would be delayed, they also maximized the chances that the firebombs would cause damage and potentially fatal injury inside the residences.

Finally, many aspects of living in public housing at RGHD rendered the victims in this case particularly vulnerable.  By virtue of being public housing occupants reliant on federal funding for basic subsistence to live, the victims faced limited choice in and other significant constraints on where they could live.  More tangibly, residing in RGHD also meant living in confined spaces with lower and upper levels.  Such a setup left the victims extremely susceptible to the defendant's crimes, where firebombs thrown through lower-level windows into small living quarters could have quickly ignited the close quarters, trapping and/or injuring the victims inside.  As tenants of public housing, the victims were unable to avoid such circumstances.

1. Defendant's Reliance on *Rising Sun* Misses the Mark

In opposing the vulnerable-victim enhancement, the defense argued that applying it here would effectively render the enhancement moot because it would necessarily apply to all such hate crimes and thus strip it of its applicability as an enhancement.  To this end, defendant FELIX's counsel points to United States v. Rising Sun, 522 F.3d 989 (9th Cir. 2008), as precluding the enhancement's application

7

in this case. In Rising Sun, the Ninth Circuit found the vulnerable-victim enhancement did not apply where a defendant killed two women in a remote area of Montana.  The court held that the remote crime location alone was insufficient to sustain the enhancement upon the defendant's sentencing for the murders, requiring that something about the victim must render him "more susceptible than other members of the public to the criminal conduct at issue."  Id. at 995.

Defendant's reliance on Rising Sun to caution against applying the vulnerable-victim enhancement is misplaced.  Rising Sun explicitly noted that a sentencing court can consider both characteristics and circumstances, together, in determining whether the enhancement applies.  And it relied heavily on an analysis of United States v. Weischedel, in which a car salesman was lured to remote area and murdered by two defendants posing as customers, in part because the victim felt obligated, as a salesman, to drive the defendants to the location they requested.  201 F.3d at 1253.

The Weischedel court, however, explicitly rejected the argument that a court must consider only the victim's personal characteristics in applying the § 3A1.1(b) enhancement.  Id. at 1254.  Instead, it stated that a court must make "sure the 'vulnerable victim' analysis focused on the particular vulnerability of the individual victim's situation, rather than upon attributes common to a large segment of the population."  Id. (emphasis added).  It further stressed that a sentencing court must look at case-specific factors and focus on the vulnerability of the individual victim's situation. Id.

It is through a case-specific, individualized analysis that the vulnerable-victim enhancement applies here.  Defendants' victims were more susceptible than other members of the public to defendants'

crimes because of their young age, their being asleep in the middle of the night, and their being occupants of public housing with all the limitations and circumstances that status entails.  These factors, particular to these victims, left the victims especially defenseless against the firebombing attack that targeted them.  These characteristics and circumstances – especially combined with the timing and location of the firebombing – make the victims in this case much more susceptible that other typical victims of civil rights conspiracies, criminal fair housing violations, or violent crime in aid of racketeering.  And but for the failure of the firebombs to immediately engulf their targeted locations and certain victims' quick reactions, it is likely this vulnerability would have resulted in great harm and possibly death.

### B. Defendant knew that the victims were unusually vulnerable to his crimes.

It is not reasonably in dispute that defendants, including defendant FELIX, both knew and should have known that the victims of their crimes were particularly and unusually vulnerable.  USSG § 3A1.1(b)(1) (enhancement applies to a defendant who either knew *or* should have known of the special vulnerability).

First, the record in this case makes clear that defendant had actual knowledge that his crimes targeted vulnerable children.  Prior to carrying out the firebombing, defendant FELIX discussed with his co-conspirators that the targeted residents would include children. (PSR ¶ 37.)  Indeed, three of the four targeted units did house minor children at the time of the attacks, with at least ten children at home in the firebombed units.  (PSR ¶ 37.)

9

The record also establishes that defendant FELIX knew and reasonably foresaw that the victims were particularly vulnerable because of the nighttime setting in which defendant carried out the firebombing.  Defendant was well aware that he and his co-conspirators attacked the targeted residences in the middle of the night because that was the plan and defendant participated in its nighttime execution.  Defendant FELIX has admitted that throwing firebombs into occupied residences after midnight was likely to cause serious bodily injury to at least one resident (PSR ¶ 48) suggesting that he knew or suspected the inhabitants would be at home and sleeping at that time.  Moreover, this fact was reasonably foreseeable to defendant, as he and his co-conspirators increased the chance that the victims would be asleep at home by planning their attack for a Sunday evening on Mother's day weekend, when residents are more likely to be in their homes with family around midnight.

Finally, defendant FELIX, a resident and frequent occupant in RGHD himself (PSR ¶ 92), knew, or at least should have known, that certain characteristics of a public housing complex like RGHD rendered its inhabitants particularly vulnerable to the crimes the defendants committed.  As a RGHD resident, defendant was familiar with the setup of the housing complex and the general multi-level confined layout of RGHD units.  And defendant was also likely aware, as an RGHD inhabitant, that public housing residents are afforded few options for where to live.  Accordingly, defendant either knew, or very well should have known, that targeting RGHD residents would be particularly susceptible to, and less able to avoid or resist, the defendant's firebombing attack.

### C. Defendant FELIX and his co-defendants chose an especially depraved manner to execute their crime

To analyze it another way, defendant FELIX and his co-defendants could have chosen a host of other ways to commit their arson-based hate crime without rendering the multiple victims here "unusually vulnerable." For example, (a) instead of using firebombs at all they could have burned crosses in the victims' yards, (b) instead of throwing firebombs <u>inside</u> dwellings they could have thrown the firebombs outside the residences or against the walls to simply scare the victims; (c) instead of throwing firebombs <u>inside</u> dwellings that were <u>occupied</u> by <u>sleeping families</u> they could have conducted their mission at a time no one was home or at least while residents were awake; or (d) they could have chosen not to <u>break windows</u> to allow firebombs unmolested entry and chosen not to target the entrance/exit to the residences thus <u>blocking their victims' potential escape</u>. Any one of these lesser options could have reduced the likelihood of death or significant property damage, yet defendant FELIX and his codefendants deliberately executed a scheme that included each and every one of these "depraved" aggravators. <u>Castellanos</u>, 81 F.3d at 111 (enhancement applies "when [victims] targeted . . . render the defendant's conduct more criminally depraved.")  It cannot be credibly argued that a preponderance of the evidence – <u>almost all of which comes from admitted and uncontested facts</u> – of these combined factors fails to establish the victims here were "unusually vulnerable."

### III. CONCLUSION

For the reasons above, the victim characteristics and other circumstances of defendants', including defendant FELIX's', crimes of

11

conviction fall squarely within the type of particularly heinous conducted targeted by USSG § 3A1.1(b).  Accordingly, the United States urges that the Court apply this two-level enhancement upon sentencing defendant FELIX and all other co-defendants in this matter.